**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JASON COLE,                              )
       Plaintiff,                    )    Civil Action No. 15-104
                              )    United States Magistrate Judge
     v.                                      )    Cynthia Reed Eddy
                              )
RICK ENCAPERA, TERRY CHILDS,             )
JUSTIN SCHULTZ and                       )
CALIFORNIA BOROUGH                       )
        Defendant.                    )

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.    INTRODUCTION

Presently before the Court for disposition are the following:

(1) Defendant Justin Shultz's[2] motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 32]; and

(2) Defendants California Borough, Rick Encapera and Terry Childs' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 34].

The motions are fully briefed and ripe for disposition. For the reasons that follow, Defendant Shultz's motion to dismiss is denied and Defendants California Borough, Rick Encapera and Terry Child's motion to dismiss is denied.

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

[2] While Plaintiff identifies this Defendant as "Justin Schultz" throughout his pleadings, the Defendant points out that Plaintiff incorrectly identified this Defendant, and the correct spelling of his last name is "Shultz." Therefore, for purposes of this motion, the Court will refer to this Defendant by the correct spelling of his last name.

## II. BACKGROUND

The following allegations are summarized from Plaintiff's Second Amended Complaint and are considered true for purposes of this decision. Plaintiff Jason Cole ("Plaintiff") is a resident of Washington County, Pennsylvania and is the owner and sole proprietor of J. Cole's Inn, an unincorporated, licensed bar and restaurant located at 334 Third Street, California, Pennsylvania 15419. Defendant Rick Encapera ("Chief Encapera") is, and at all time relevant to this action, served as the Chief of Police of the California Borough Police Department ("California Police"). Defendants Terry Childs ("Officer Childs") and Justin Shultz ("Officer Shultz") at all times relevant to this action were sworn police officers of the California Police Department. Defendant Borough of California (the "Borough") is a Pennsylvania municipal corporation and the California Police is a division of the Borough empowered to create and enforce municipal policy, code and handle all aspects of law enforcement.

Plaintiff has owned J. Cole's Inn for twenty years and the establishment has been free of any significant legal or regulatory history. Plaintiff and J. Cole's Inn maintain a clear license history with the Pennsylvania Liquor Control Board and the State Police Liquor Code Enforcement division. Plaintiff has never been arrested and when he is not operating J. Cole's Inn, he works as a paramedic and EMT. He cooperates with law enforcement and is supportive of the police's legitimate efforts.

Beginning in 2013, Plaintiff began receiving complaints from his employees, who were college-aged female servers and bartenders, about improper conduct and abuse by Officers Shultz and Childs. Specifically, Plaintiff's employees informed him that the officers regularly made sexually harassing and suggestive comments to them, encouraging the female employees to meet to engage in sexual relations while the police officers worked their shifts. The female

employees indicated that because the police officers were on duty while the officers engaged in this conduct, they feared reprisal if they declined the propositions. These employees complained that the officers created an atmosphere of fear at J. Cole's Inn. Plaintiff asked his employees about the specific nature of the police misconduct and at least one female employee informed Plaintiff that she engaged in sexual relations with one of the police officers while he was on duty for the California Police and that he persisted in harassing her after the incident. The employees pleaded with Plaintiff to help them in stopping the police harassment as their employer and because the employees believed Plaintiff was in a position to help them.

After his employees provided this information to him, Plaintiff continued to gather information from his employees and in February 2013, he approached Officers Shultz and Childs and discussed the employee complaints in front of another police officer and a witness. Plaintiff demanded that the officers desist from such conduct or he would file a formal complaint against them to Chief Encapera. Immediately after this interaction, Officers Shultz and Childs began retaliating against, harassing and intimidating Plaintiff by using their position as police officers. Plaintiff obtained written statements from some employees and J. Cole Inn patrons who witnessed the officer misconduct. The statements revealed that Officers Shultz and Childs routinely harassed, threatened, and in some instances, physically assaulted J. Cole Inn patrons. Plaintiff also obtained a cell phone video showing an officer aggressively and without provocation deploying a Taser on a patron who was on the ground. Plaintiff publically criticized the police for this misconduct. Plaintiff approached Chief Encapera with this information regarding the officer misconduct and Chief Encapera informed Plaintiff that he failed to complete the appropriate forms and rejected his report. Plaintiff told Chief Encapera that he would not tolerate abusive conduct by the officers.

On May 4, 2013 at approximately 12:30 a.m., California Police, acting at the direction of Chief Encapera, unlawfully entered and "closed" J. Cole's Inn by ordering all of the patrons and employees from the facility. The officers had no cause to shut down the establishment. After this event, Plaintiff approached the Borough's administration with his complaints against the California Police. Two members of the Borough's Council instructed Plaintiff to attend a Council meeting and to provide the Borough with his formal complaints and supporting materials for the Council's review. Plaintiff provided Council with several boxes of documents including witness statements, cell phone text logs and call records, petitions and written formal complaints. On June 13, 2013, Plaintiff attended a Borough Council meeting and delivered multiple documents, statements and other evidence to support his and his patron's retaliation and harassment claims. The minutes of the meeting reflect that:

> Mr. Cole, "his business, and several other people around the area have been experiencing harassing troublesome conduct at the hands of the local police department. He and many others have submitted various complaints on your standard form to the borough and he has been recently informed that they have either been lost or misplaced but in any event they were unresponded [sic] to. Tonight he is here to gladly say that Mr. Cole held on to copies of those complaints and was instructed to come back and reproduce those for you tonight. He has brought them here and these are the complaints from the residents, other businesses and Mr. Cole. There are reproduced copies here for each council member. Mr. Popojas (his attorney) stated he advised Mr. Cole since he has retained separate counsel for any claims that he may have arising from this not to make a statement tonight and that is why he is here. He asked council to review the documents and to proceed accordingly.

Second Am. Compl. ("SAC") [ECF No. 30] at ¶ 23.

Plaintiff made it known to the Borough that he intended to file a lawsuit based upon the officer's conduct. Sometime thereafter, Plaintiff was contacted by the Borough and informed that it had authorized an independent investigation into the multiple reports of police misconduct.

The Borough directed Plaintiff to cooperate with the investigation by providing them with information and Plaintiff was contacted by licensed private investigators hired by the Borough to assist in the investigation. Plaintiff provided the statements and information to the investigators, identified and coordinated witnesses for investigation interviews and responded to inquiries from the investigators. The investigators ultimately recommended the Borough to take disciplinary action and referred the investigation to the District Attorney of Washington County for the prosecution of the police officers and for corruption and official misconduct.

The Borough took disciplinary action against Shultz and Childs, but the officers continued to harass, coerce and intimidate Plaintiff and interfered with the lawful operation of his business. Officers Shultz and Childs began to follow Plaintiff in their police vehicles in an intimidating fashion while Plaintiff drove through town and threatened to arrest Plaintiff for any minor act, informed him that they would charge him for driving under the influence of alcohol if they saw him driving, and threatened that Plaintiff could "disappear." Additionally, on more than one occasion, uniformed and plain clothes police officers entered J. Cole's Inn and harassed Plaintiff, his staff and security personnel. Also, a police officer remarked that narcotics or paraphernalia was located at the Inn and police action would be taken. Plaintiff knew that these allegations were contrived. On at least two occasions, police officers matching the descriptions of Shultz and Childs were identified by witnesses as having conducted warrantless searches of outbuildings and storage areas located within the curtilage of Plaintiff's home in Bentleyville, Washington County, Pennsylvania, far from the California Police's jurisdiction. On each instance, Shultz and Childs were operating vehicles utilized by the Washington County District Attorney's Drug Task Force, a clandestine narcotics investigation unit employing Shultz and Childs in part-time capacities. Plaintiff believes that the officers used the resources and authority

of the Drug Task Force to subject him to a baseless investigation as a way to further harass, intimidate and coerce Plaintiff from cooperating with the Borough's investigation. Chief Encapera supported the officer's conduct by allowing the officers to work the additional details for the Drug Task Force. Chief Encapera also publically remarked that the "police were going to get" Plaintiff. *Id.* at ¶ 38. Additionally, another California Police officer, Robert Dorcon, followed Plaintiff and drove a county owned Drug Task Force undercover vehicle in proximity to Plaintiff's home, parking and monitoring his activities.

Continuing through fall of 2014, California Police officers closely monitored Plaintiff's activities, would regularly park their police vehicles immediately in front of or across the street from J. Cole's Inn. The officers would also interfere with J. Cole's Inn's security personnel in the performance of I.D. checks at the establishment's entrance, often making remarks about arresting or searching patrons, and in some instances dispersing patrons lawfully waiting at the entrance to the Inn. Police officers regularly displayed offensive weapons and made comments to terrorize the Inn's patrons. On one occasion, a police officer physically assaulted and arrested one of Plaintiff's tenants who resided in an apartment above the Inn. Also, on more than one occasion, officers made racially offensive remarks directed towards minority patrons of the Inn. Approximately 40% of the Inn's patrons are minorities. Because of the increased police presence and threatening conduct, many patrons became concerned and stopped patronizing the Inn and expressed concerns to Plaintiff and via social media that they were avoiding J. Cole's Inn because of police actions.

Plaintiff also learned that Chief Encapera had contacted the Pennsylvania State Police Liquor Control Enforcement ("LCE") to open a "nuisance bar" investigation to shutter J. Cole's Inn. Chief Encapera boasted that he would "shut Cole down" and "get him back." *Id.* at ¶ 45. In

mid-October 2014, Chief Encapera directed California Borough Zoning Officials to conduct unnecessary and unscheduled inspections of J. Cole's Inn for the purpose of compiling a record against him. The Borough's Zoning Officer, Shannon Kratzer, ("Mr. Kratzer") entered the Inn after work and expressed to Plaintiff his personal regret that the Borough was trying to close his business. Mr. Kratzer related that the Borough's secretary maintained a file to be supplied to LCE's Nuisance Bar office. The collective actions of Encapera, Shultz, Childs, and the officers of the California Police caused significant financial distress to Plaintiff and jeopardized the continued operation of J. Cole's Inn. Plaintiff has limited the operation of his establishment because of the decline in business resulting from police harassment.

Plaintiff filed suit against Chief Encapera, Officers Childs and Shultz and California Borough alleging the following claims: (1) a violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; (2) civil conspiracy to violate constitutional and civil rights pursuant to 42 U.S.C. § 1983; (3) First Amendment retaliation; (4) a *Monell* liability claim pursuant to 42 U.S.C. § 1983; (5) a violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and (6) tortious interference with business relationships.

Defendant Shultz moved to dismiss the entirety of Plaintiff's complaint. *See* Shultz Mot. to Dismiss [ECF No. 32]. Thereafter, Defendants California Borough, Rick Encapera and Terry Child moved to dismiss the entirety of Plaintiff's complaint. *See* Borough's Mot. to Dismiss [ECF No. 34].

III.    STANDARD OF REVIEW

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555).  The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010).  Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted).  A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

Plaintiff brings most of his claims pursuant to 42 U.S.C. § 1983.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).  In order for a plaintiff to adequately state a claim under Section 1983, he must establish that the defendants deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

## IV.    DISCUSSION

While the Defendants filed separate motions to dismiss, because the reasons for dismissal set forth in each motion are indistinguishable, the arguments as they pertain to each claim will be addressed concurrently.

### a.   Violation of Due Process Clause pursuant to the Fourteenth Amendment

First and foremost, Defendant Shultz argues that Plaintiff's complaint insofar as it alleges a procedural due process violation pursuant to the Fourteenth Amendment should be dismissed. Plaintiff does not contest this argument, responding that he has not brought a procedural due process claim.  Therefore, this Court will only read the complaint as including a claim for a substantive due process violation of the Fourteenth Amendment and determine whether the complaint fails to state a substantive due process claim.

The Defendants argue that Plaintiff has failed to allege a deprivation of a protected property interest, and alternatively, any deprived property interest does not shock the conscience.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const.

Amend. XIV § 1.  The Due Process Clause includes both a procedural and substantive component.  *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846-47, 120 L.Ed.2d 674 (1992).  "The substantive component of the Due Process Clause 'protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.'"  *Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist.*, 272 F.3d 168, 172 (3d Cir. 2001) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 117 L.Ed.2d 261 (1992)) (internal citations and quotation marks omitted).  "Substantive due process contains two lines of inquiry: one that applies when a party challenges the validity of a legislative act, and one that applies to the challenge of a non-legislative action."  *Am. Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) (citing *Casey*, 505 U.S. at 846-47).  When the challenged conduct is non-legislative, a plaintiff "must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.'"  *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015) (quoting *Gottlieb*, 272 F.3d at 172); *see also Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 660-62 (3d Cir. 2011).  A court must determine as a threshold matter "whether the property interest being deprived is 'fundamental' under the Constitution.  If it is, then substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of procedures used."  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000).

The Middle District of Pennsylvania in a similar case determined that the use and enjoyment of real property constitutes an interest protected by substantive due process where certain municipal officials, including municipal police, harassed a nightclub so severely that it was financially impossible for the plaintiff-owners to continue operating the nightclub.  *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 486 (M.D. Pa. 2012).

Additionally, the court found that the Plaintiff-nightclub owner was deprived of his liberty right in pursuing his occupation, finding that government harassment that prevents a bar owner from operating his business creates a proper substantive due process claim. *Id*. at 486-87 (citing *Benigni v. City of Hemet*, 879 F.2d 473, 479 (9th Cir.1988)).

For those same reasons, this Court finds that Plaintiff has adequately stated the deprivation of a protected property interest for the deprivation of the ability to use and enjoy the J. Cole Inn property and his liberty interest in pursuing his occupation. Plaintiff has also adequately alleged he was deprived of his property and liberty interest as he alleges, *inter alia*, that Defendants' harassing and threatening conduct, the unsubstantiated and unwarranted closing of his establishment and the investigations into the establishment resulted in a major decline in his business and limited his operation of J. Cole's Inn.

Defendants also argue that the conduct alleged falls short of conscious shocking. This argument is also rejected. That members of a police force would use the police power bestowed upon and entrusted to them by the public to quell a business owner's free speech criticizing police officers' conduct is sufficiently egregious to rise to the level of shocking the conscious. There is no legitimate state interest in abusing police powers.

Accordingly, Defendants' motions to dismiss Plaintiff's substantive due process claim are denied.

b.  <u>First Amendment Retaliation</u>

Next, Defendants argue that Plaintiff has not adequately stated a First Amendment retaliation claim because he has failed to allege retaliatory conduct causally linked to protected speech.

The First Amendment of the Constitution guarantees "the right of people . . . to petition

the Government for a redress of grievances." U.S. Const., Amend. I. This right is related "to the protection afforded to speech and 'is an assurance of a particular freedom of expression.'" *Arneault v. O'Toole*, 513 F.App'x 195, 198 (3d Cir. 2013) (quoting *McDonald v. Smith*, 472 U.S. 479, 482, 86 L.Ed.2d 384 (1985)). "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L. Ed. 2d 441 (2006). "[T]he right to petition extends to all departments of the Government, including administrative agencies, . . . and encompasses formal and informal complaints, . . . about matters of public and private concern." *Arneault*, 513 F.App'x at 198 (internal citations and quotation marks omitted) (finding no difference between retaliation against "an individual for exercising his rights under the First Amendment or directing the company of which he is a fiduciary to do so.").

To adequately state a claim for retaliation under the First Amendment, a plaintiff must allege "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). In making this determination, the "key question" is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296 (citations and quotation marks omitted). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*, 523 U.S. 574, 589, 118 S. Ct. 1584, 1592, 140 L. Ed. 2d 759 (1998).

Initially, the Court finds that Plaintiff has engaged in constitutionally protected conduct, as his public criticism of police misconduct and corruption, as well as his involvement in the

Borough's investigation of police misconduct and corruption is protected by the Petition Clause of the First Amendment. *See also Arneault*, 513 F. App'x at 198.

Courts have "recognized [that] a pattern of threats and harassment [is] sufficient to state a claim for First Amendment retaliation." *Benkoski v. Wasilewski*, No. CIV A 3:07-CV-0197, 2007 WL 2670265, at *9 (M.D. Pa. Sept. 7, 2007) (citing *Suppan v. Dadonna*, 203 F.3d 228, 234-35 (3d Cir. 2000)). Moreover, in *Thomas v. Indep. Twp.*, 463 F.3d 285 (3d Cir. 2006), the Court of Appeals found that a Township's Police Officers retaliated against the plaintiff-business owners' free speech rights where the plaintiffs appealed the Township's denial of a liquor license transfer to plaintiffs. In that case, the township officer's made false and defamatory statements to township residents about the plaintiffs and their business, entered plaintiffs' business without probable cause or valid reason, wrongly accused the plaintiffs of violating the law, misrepresented laws, conducted surveillance of plaintiffs, their businesses and patrons from an area located across the street from the business, increased and heightened police presence and surveillance, subjected plaintiffs to unreasonable and unlawful search and seizure and threatened or caused unwarranted investigations of the plaintiffs by other governmental agencies. *Id.* at 290.

Here, Defendants argue that Plaintiff has not adequately pleaded retaliatory conduct that was causally linked to the protected speech. Plaintiff's complaint clearly asserts that the Defendants engaged in a campaign of harassment and intimidation in retaliation against Plaintiff for exercising his First Amendment rights by criticizing the California Borough Police's inappropriate conduct with J. Cole Inn employees and patrons. After Plaintiff publically criticized certain officers' sexually explicit conduct with Plaintiff's employees while on duty and the physical assaults of Plaintiff's patrons, Plaintiff alleges that Defendant Officers entered and closed his establishment without probable cause or valid reason, followed Plaintiff in police

13

vehicles, threatened to charge Plaintiff with crimes, implied that Plaintiff could "disappear," caused unwarranted and unsubstantiated investigations into Plaintiff's establishment, included other governmental agencies in such unwarranted investigations, conducted surveillance of Plaintiff's establishment, interfered with Plaintiff's establishment's security personnel in allowing patrons to enter the establishment, intimidated patrons entering the establishment by displaying their service weapons, and made racially offensive remarks to the establishment's minority patrons. While "it is generally a question of fact whether a retaliatory campaign of harassment has reached the threshold of actionability under [Section] 1983," *Suppan*, 203 F.3d at 233-34, this Court finds that Plaintiff has sufficiently pleaded retaliatory action and a causal link against the Defendants to state a claim.

Accordingly, Defendants' motions to dismiss Plaintiff's First Amendment Retaliation claim is denied.

    c.   Violation of the Equal Protection Clause pursuant to the Fourteenth Amendment

Next, Defendants argue that Plaintiff has not adequately stated an Equal Protection claim under the Fourteenth Amendment because he has not alleged sufficient facts to show he was treated differently from others similarly situated and there was no rational basis for the treatment.

The Equal Protection Clause of the Fourteenth Amendment proscribes a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV § 1. To adequately state an Equal Protection Claim under a class of one theory, as Plaintiff seeks to do, he must illustrate he was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "To be 'similarly situated,'

parties must be 'alike in all relevant aspects.'" *Perano v. Twp. of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir.2008)).

Here, Plaintiff has adequately alleged a class of one Equal Protection claim against Defendants. He alleges that the Defendants, as California Borough law enforcement, treated Plaintiff differently than similarly situated bar establishment owners. The Defendants also argue that the officers' conduct involves "discretionary decision making" in the investigation of a nuisance bar and therefore they were permitted to treat Plaintiff differently than similar situated parties. This argument is unavailing. In *Revak v. Lieberum*, the court explained:

> There are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Revak v. Lieberum*, No. CIV.A. 08-691, 2009 WL 185997, at *4 (W.D. Pa. Jan. 23, 2009) (explaining that a police officer pulling over a "speeder" might produce a class of one, but this does not "invoke the fear of improper government classification" and does not violate the Equal Protection Clause). An officer does not act unconstitutionally where his actions necessitate discretionary decision making and the situation does not "invoke the fear of improper government classification" that the Equal Protection Clause protects against. *Id.*

However, the claims alleged by Plaintiff and taken as true for purposes of this motion do not involve "discretionary decision making" in investigating a nuisance bar or the arbitrary singling out of one person that would undermine the very discretion given to officers, but rather involve improper conduct by Borough police officers against Plaintiff for his speaking out

against police misconduct and corruption. *See also Rittenhouse Entm't, Inc.*, 861 F. Supp. 2d at 481 (equal protection claim survived a motion to dismiss where plaintiff nightclub alleged other nightclubs were not treated equally by law enforcement and governmental agencies). Whether Defendants had a rational basis for such treatment is an issue of fact not appropriate for determination at the motion to dismiss stage. *See id.*

Accordingly, Defendants' motions to dismiss are denied as to Plaintiff's equal protection claim.

d. Section 1983 and state law conspiracy

Defendants next move to dismiss Plaintiff's claim for conspiracy pursuant to 42 U.S.C. § 1983. Defendants argue that Plaintiff fails to adequately allege a meeting of the minds or understanding between the officers to state a conspiracy claim. Additionally, the Defendants argue that the "intra-corporate conspiracy doctrine" bars Plaintiff from pleading a conspiracy claim.

To prevail on a conspiracy claim pursuant to Section 1983, "a plaintiff must prove that persons acting under color of law conspired to deprive him of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "[T]o properly plead an unconstitutional conspiracy claim, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted) (noting conspiracy requires a "meeting of the minds.").

Here, Plaintiff has adequately pleaded a cause of action for conspiracy under Section 1983. As set forth *supra*, Plaintiff has alleged multiple constitutional violations pursuant to Section 1983. *See Holt Cargo Sys., Inc. v. Delaware River Port Auth.*, 20 F. Supp. 2d 803, 843

(E.D. Pa. 1998) *aff'd*, 165 F.3d 242 (3d Cir. 1999) (to state a claim for conspiracy under Section 1983, there must be a predicate violation under Section 1983). As Plaintiff seems to allege only conspiracy for his First Amendment retaliation claim, only that claim will be addressed. Plaintiff has adequately alleged a "meeting of the minds," because it can be inferred from the allegations that Defendants retaliated against Plaintiff for engaging in protected First Amendment activity. Plaintiff pleaded that the Defendant Officers retaliated against Plaintiff after he confronted them regarding their misconduct, reported the misconduct to the Borough and cooperated with the Borough Council's investigation in to the police misconduct. After Plaintiff engaged in this protected conduct, the Defendant Officers retaliated against him by harassing and threatening Plaintiff, his employees and patrons, illegally searching Plaintiff's property and closing his bar without reason. Those allegations are enough to infer that Defendants agreed to conspire against Plaintiff in an attempt to silence him or retaliate against him for speaking out against police corruption and misconduct.

Insofar as Defendants argue that the "intra-corporate conspiracy doctrine" bars Plaintiff's conspiracy claim, this argument is also rejected.[3] Not only is the intra-corporate conspiracy doctrine inappropriate to determine at the motion to dismiss stage, as it is "a defense and requires a factual inquiry," *Logan v. Salem Baptist Church of Jenkintown*, 2010 WL 3364203, at *5 (E.D.Pa. Aug. 17, 2010), it cannot be used to shield liability when police officers conspire with one another in their individual capacities. *Minor v. Cumberland Twp.*, No. CIV.A. 13-1821, 2015 WL 5691120, at *2 (W.D. Pa. Sept. 28, 2015); *Sawl v. The Borough of W. Kittanning*, 2010 WL 1444868, at *7 (W.D.Pa. April 9, 2010) (the intra-corporate conspiracy doctrine "does not

---

[3]     Under the intra-corporate conspiracy doctrine, "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (citation omitted).

prevent police officers from conspiring with one another, when they are alleged to be acting within their individual, as opposed to official capacities.").

Accordingly, Defendants' motions to dismiss Plaintiff's state law conspiracy claim are denied.

e.   Municipal liability

Next, Defendant California Borough moves to dismiss Plaintiff's claim of municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), arguing that Plaintiff fails to allege the existence of a policy that caused the deprivation of his constitutional rights.

Municipalities are considered "persons" under Section 1983 and an action may be brought directly against it for monetary, declaratory or injunctive relief. *Monell*, 436 U.S. at 694. To establish municipal liability, the Plaintiff must: "1) demonstrate the existence of an unlawful policy or custom, and 2) prove that the municipal practice was the proximate cause of the injury." *Rittenhouse Entm't, Inc.*, 861 F.Supp.2d at 480 (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990)).  The plaintiff must identify a municipal policy or custom that caused his injury and the theory of liability may not be based solely upon a theory of respondeat superior. *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000).  Under *Monell*, a municipal policy exists where a "decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict." *Bielevicz*, 915 F.2d at 850 (citation and quotation marks omitted).  A plaintiff can also establish a custom under *Monell* "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citations omitted).  "In other words, custom may be established by proving knowledge of, and acquiescence to, a

practice." *Watson v. Abington Twp.*, 478 F.3d 144, 155–56 (3d Cir.2007). To establish causation, the plaintiff must allege a "plausible nexus" or that an "affirmative link" exists between the violation and the municipality's custom or practice. *Bielevicz,* 915 F.2d at 850. "Causation exists where the connection between the policy and injury is so strong that it would be a plainly obvious consequence." *Rittenhouse Entm't, Inc.*, 861 F.Supp.2d at 480 (citing *Bd. of County Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Here, the Borough argues that Plaintiff has failed to allege that Chief Encapera possessed final decision-making authority or that a specific decision deprived Cole of his constitutional rights. Defendant also argues that Plaintiff fails to allege the existence of a policy that deprived his constitutional rights. As to the latter argument, it is clear that Plaintiff does not allege that an official policy of California Borough violated his constitutional rights. Rather, Plaintiff alleges that the Borough police department's custom of retaliating against citizens who speak out against police misconduct and corruption was so pervasive as to constitute custom. Further, the Court can infer from the complaint that Defendant Encapera, as a police chief, possesses final decision-making authority. Furthermore, Plaintiff alleged that Chief Encapera knew of the inappropriate conduct of his officers, acquiesced by failing to employ any corrective measures as to this conduct and engaged in the campaign of retaliation himself.

Accordingly, Plaintiff has stated a claim against the Borough under *Monell* and the Borough's motion to dismiss this claim is denied.

    f.   <u>Tortious interference with business relationships</u>

Lastly, Defendants move to dismiss Plaintiff's claim for tortious interference with business relations because they argue that Plaintiff has not adequately pleaded facts to establish a contractual relationship with his patrons at J. Cole's Inn.

To state a claim under Pennsylvania law for tortious interference with business relations, a plaintiff must allege "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and, (4) the occasioning of actual damage resulting from the defendants conduct." *Vintage Homes, Inc. v. Levin,* 382 Pa.Super. 146, 554 A.2d 989, 994 (Pa.Super.Ct.1989). While courts are cautious to define the terms "prospective contractual relation," the plaintiff must show that there is a "reasonable likelihood or probability" of the contractual relation which is "something more than a mere hope or innate optimism of the salesman.'" *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa.Super.Ct.2006)) (citations omitted). *See also Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, No. CIV.A. 3:11-617, 2012 WL 3562030, at *17 (M.D. Pa. Aug. 16, 2012) (same).

Plaintiff has adequately stated a claim, as he has alleged that J. Cole Inn patrons will not frequent the establishment because of the police harassment, thereby interfering with prospective contractual relationships with customers at J. Cole's Inn "who might have purchased food or drinks" at the establishment. *Rittenhouse Entm't, Inc.*, 861 F. Supp. 2d at 490. (finding nightclub stated cause of action for tortious interference with business relationships where the business was adversely affected by municipal employee's actions).

Accordingly, Defendants' motions to dismiss Plaintiff's tortious interference with business relationships claim are denied.

## V. CONCLUSION

Based on the foregoing, Defendant Shultz's motion to dismiss is denied and Defendants'
Rick Encapera, Terry Childs and California Borough's motion to dismiss is denied.

An appropriate Order follows.

Dated: December 11, 2015

By the Court,

/s Cynthia Reed Eddy
CYNTHIA REED EDDY
United States Magistrate Judge

cc:     *Counsel for Plaintiff*
        Richard J. Cromer, Esquire
        Steven M. Toprani, Esquire
        Jessica K. Ziemski, Esquire
        Leech Tishman Fuscaldo & Lampl, LLC
        525 William Penn Place, 28th Floor
        Pittsburgh, PA 15219
        *via CM/ECF electronic filing*

        *Counsel for Defendants Rick Encapera, Terry Childs and California Borough*
        Christopher P. Gerber, Esquire
        Eric M. Brown, Esquire
        Siana, Bellwoar & McAndrew, LLP
        941 Pottstown Pike, Suite 200
        Chester Springs, PA 19425
        *via CM/ECF electronic filing*

        *Counsel for Defendant Justin Schultz*
        Bernard P. Matthews, Jr., Esquire
        Meyer, Darragh, Buckler, Bebenek & Eck
        114 South Main Street
        Greensburg, PA 15601
        *via CM/ECF electronic filing*