IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| JASON COLE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-00104-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| RICK ENCAPERA, TERRY CHILDS, | ) | |
| JUSTIN SHULTZ, CALIFORNIA | ) | |
| BOROUGH, CASEY DURDINES, | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.      INTRODUCTION

Presently before the court for disposition are the following:

1.  Defendants California Borough ("Borough"), Terry Childs ("Officer Childs"), Casey Durdines ("Mayor Durdines") and Rick Encapera's ("Chief Encapera") motion for summary judgment [ECF No. 133]; and

2.  Defendant Justin Shultz's ("Officer Shultz") motion for summary judgment [ECF No. 136].

The motions are fully briefed and ripe for disposition.  For the reasons that follow, the motions are granted in part and denied in part.

## II.      FACTUAL BACKGROUND

Plaintiff Jason Cole ("Plaintiff") initiated the present civil rights action alleging that the defendants' conduct violated his civil rights and various state laws in connection with a bar he owns in California Borough, Pennsylvania.

---

[1]      All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

Many of the allegations contained in the parties' respective concise statements of material facts are void of specific dates of events that are alleged to have occurred and that are crucial to the subject matter of this complaint. Moreover, the court notes that the factual allegations of Plaintiff's complaint are largely supported by circumstantial evidence and his own deposition testimony and at times, Plaintiff fails to remember when some of the material allegations transpired. Moreover, Plaintiff's responsive concise statement of material facts submitted to defend against the motions for summary judgment does not give specific dates detailing when some material events occurred. What is more, that out of thousands of pages of deposition transcripts, police reports, and other documentary evidence, Plaintiff's recollection of the chronology of the events that occurred come from a two-page document handwritten by him purportedly contemporaneously with the events as they transpired. *See* Pl.'s Resp. to Def. Shultz's Concise Statement of Material Fact ("SMF") [ECF No. 171-11 at 2-3]. When asked to verify these dates and meetings with the named individuals in the handwritten document in his deposition, Plaintiff's recollection was far from complete. However, Plaintiff's failure to remember the chronology and specific dates on which events occurred are significant only to his credibility, which this Court cannot and will not make a determination of. Additionally, the parties have included many immaterial and irrelevant facts in their concise statements in support of their respective briefing, none of which will be considered by the Court in determining the present motion. The Court has constructed the factual background of this opinion, to the extent necessary, from the entire record and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party in determining Defendants' motions for summary judgment.

Plaintiff has owned and operated a bar called J. Cole's Inn located in California, Pennsylvania since 1997. The bar is near California University of Pennsylvania and is mostly

frequented by local college students, but also has patrons who are alumnae and members of the community. While the bar is incorporated as a limited liability company under Pennsylvania law, Plaintiff claims that he has operated J. Cole's Inn as a sole proprietorship and has claimed all revenue from J. Cole's Inn on his personal tax returns. There are approximately four other bars in the California, Pennsylvania area that also have the reputation as being "college bars" – McMonagles, Wood Street, Lagerheards and Signatures, which are all located in the same vicinity as J. Cole's Inn. According to witnesses, J. Cole's Inn was a popular college bar and Plaintiff claims it was consistently profitable through 2011.

Sometime in 2012, the Borough hired two new police officers, Officers Childs and Shultz. These officers worked detail in the vicinity of J. Cole's Inn.

## August 2012/September 2012 Loan to Officer Shultz

In late August or early September 2012, Officer Shultz asked Plaintiff for a monetary loan and Plaintiff loaned Officer Shultz an amount between $1,500 and $2,000. Plaintiff complained to Chief Encapera that it was inappropriate for Officer Shultz to ask a local business owner for a loan, but it is unclear from the record when Plaintiff voiced his complaints to Chief Encapera or the frequency of his complaints.

## Plaintiff's Complaints to Borough in 2012

On or about October 15, 2012, Plaintiff went to the Borough Police department to speak with Chief Encapera and Officer Shultz about the loan he issued Officer Shultz, but did not meet with either individual.[2]

---

[2] To this end, Plaintiff testified:

    Q:    4:05 p.m., Monday October 15, 2012, went to police to talk to Rick about Schultz [sic] and money. Did you actually meet with Chief Encapera that date?
    A:    No.

On or about October 26, 2012, Plaintiff went to the Borough police department with the intention of complaining to Chief Encapera about an incident which occurred six months prior in which a patron was arrested outside of J.Cole's Inn and the arresting officer, Officer Childs, shoved the patron into a soda vending machine, causing damage to the machine which Plaintiff paid, or had to pay to be fixed. Shultz J.A. [ECF No. 139-3 at 59]. Plaintiff did not speak with Chief Encapera, but spoke with the Borough Secretary. It is unclear what conversation, if any, transpired between Plaintiff and the Borough Secretary.

Plaintiff again traveled to the Borough police department on or about November 15, 2012 with the intention of complaining to Chief Encapera about the vending machine, but did not meet with the chief that day.

On or about December 10, 2012, Plaintiff again traveled to the Borough police department, but the offices were closed. It is unclear whether Plaintiff intended to complain about the vending machine, or another issue.

On or about January 22, 2013, Plaintiff contacted the Borough District Attorney Gene Vittone. While Plaintiff indicates he contacted Mr. Vittone to "voice his concerns," Pl.'s Resp. to

---

Q:     What happened?
A:     It says chief not in.
Q:     I'm asking you questions now.
A:     I said no.
Q:     So you didn't meet with him? That's not what it says. It says at 3:30 – sir, I'm reading your own notes.
A:     Yeah, he wasn't in.
Q:     Hang on. October 15, 2012, went to police to talk to Rich about Schultz [sic] and the money; right?
A:     Yeah.
Q:     And you're saying that didn't happen?
A:     No, sir.

11/4/2016 Deposition of Jason Cole [ECF No. 139-3] at 228.

Defs.' SMF [ECF No. 141] at ¶ 54, he does not elaborate on what "concerns" he intended to voice, or the dates that he ever complained of any officer misconduct to Mr. Vittone. Plaintiff alleges that Mr. Vittone did not answer and that he left a message for Mr. Vittone but it was never returned. Plaintiff testified that he never met with Gene Vittone, but testified that he spoke with Gene Vittone about his claims that Borough police officers mistreated him, but could not provide an exact time frame as to when this conversation transpired, or the specific officer misconduct he allegedly communicated. Shultz J.A. [ECF No. 139-3 at 61 p. 238].

### Search of Michael Steve's Apartment

Plaintiff rented out apartments above J. Cole's Inn. On or about January 26, 2013, the police, and specifically, Officer Childs conducted a warrantless search of one of Plaintiff's tenants, Michael Steve's apartment after receiving a call reporting a disturbance involving a firearm. Michael Steve was also Plaintiff's employee at the time. The officers caused unspecified property damage to the apartment after kicking in the door to the apartment to gain entrance.

### Sexual Harassment Allegations

Plaintiff maintains that Officers Shultz and Childs sexually harassed his female bartenders both in person at the bar while the bartenders were working shifts and Officers Childs and Shultz were working detail at the bar, and via text message between these individuals. This conduct allegedly occurred from the time Officers Shultz and Childs began to work for the Borough in 2012.

On or about February 13, 2013, Plaintiff learned that a frequent patron of J. Cole's Inn, Autumn Pawelec, was not of the legal age to consume alcohol. This caused Plaintiff to become concerned about possible Liquor Control Enforcement ("LCE") violations in connection with serving alcohol to a minor. Plaintiff also learned that this woman was allegedly engaging in sexual

relations with Officer Shultz, and Plaintiff suspected that Officer Shultz and/or Childs knew that she was underage while she consumed alcohol in J. Cole's Inn and various other local bars, but that the officers did nothing about this conduct because of Shultz's alleged sexual relationship with her. Officer Shultz denies that he knew that Autumn Pawelec was underage.

Once Plaintiff learned of this, he asked his head bartender, Melissa Tedrow, to dig up "ammo" (*i.e.*, damaging information or "dirt") on Officers Shultz and Childs. Defendants allege that Plaintiff did so to use this damaging information as a defense against any potential Liquor Control Board investigations in connection with serving alcohol to an underage person. Plaintiff alleges that he did so to request proof that Officer Shultz knew she was not of the legal drinking age. Nonetheless, Plaintiff asked Tedrow to send him screenshots of any text message ever sent to her by Childs or Shultz that she felt was inappropriate and Tedrow complied.[3] At this point, Tedrow also informed Plaintiff that in October 2012 when she was working a shift at J. Cole's Inn, Officer Childs took her phone off of the bar and deleted allegedly inappropriate text messages that he sent to her.

---

[3] It is unclear from the record exactly when Plaintiff became privy to the Officers' allegedly sexually inappropriate conduct against his employees. Regardless of how or when Plaintiff learned of the Officers' inappropriate sexual comments made to his female employees, Plaintiff's motives in compiling this information is immaterial for purposes of this motion. In defending the motions for summary judgment, Plaintiff pays too much attention to trying to prove the officers' alleged salacious misconduct. What is material for purposes of these motions are when he complained about the misconduct and to whom, the subject matter of those complaints, and the alleged retaliation he suffered after he made these complaints. Plaintiff instead attempts to convince the court that the officers' sexual harassment of his employees indeed occurred. As previously explained, it is not for the court to pass judgment on whether the officers acted inappropriately with bar patrons or Plaintiff's employees; those individuals are not parties to this lawsuit, and Plaintiff does not allege that the Officers ever directed sexual comments towards him. Rather, it is the Court's responsibility to determine whether Plaintiff has adequately adduced evidence of the elements of the claims he brings against these defendants. Whether the officers indeed acted inappropriately with Plaintiff's employees and other members of the community is not an element to any of the claims brought by Plaintiff, and therefore need not be discussed further.

Tedrow also rented an apartment located above J. Cole's Inn. On February 14, 2013, Officers Shultz and Childs, who were in uniform and carrying service weapons, blocked Tedrow's path as she attempted to leave J. Cole's Inn to return to her apartment and questioned her about any pictures she may have on her phone that would make the officers look bad.

From the entirety of the submissions by the parties, it is unclear whether Plaintiff knew of the sexually inappropriate remarks that Officers Childs and Shultz made to his employees prior to February 2013. Tedrow testified that Plaintiff could have been in earshot of conversations that she had with other bartenders about these officers inappropriate conduct in 2012, but what is clear from the record is that the first time that Plaintiff complained of the officers' alleged sexual harassment of his employees was on February 15, 2013.[4] On that day, Plaintiff confronted Officers Shultz and Childs about their conduct toward his employees and specifically towards Tedrow telling them to cease the harassing conduct. Another Borough officer, Officer Colin Rockwell was present for this interaction.

**Police Presence at J. Cole's Inn**

Plaintiff claims that after he confronted Officers Shultz and Childs in February 2013, the officers "maintained a constant presence outside J. Cole's Inn" by stationing their police cars in

---

[4] While Plaintiff would have this court find that he complained about the officers' sexual harassment of his employees at a time prior to this, Plaintiff does so by referencing general complaints about officer misconduct related to other events which occurred. Plaintiff does not specifically allege that he complained about the officers' sexual harassment at any time prior to his interaction with the officers on February 15, 2013. Because the non-moving party at summary judgment must present more than just bare assertions and conclusory allegations to show the existence of a genuine issue of material fact, for purposes of this motion, the court will reject Plaintiff's bare assertions that he complained of general misconduct to bootstrap his allegations that he complained specifically of sexual harassment being suffered by his employees. Plaintiff's theory of liability rests solely upon his allegation that he was retaliated against by the Defendants for complaining of the Officers' sexual harassment of his employees and he does not allege that he was retaliated against for any other complaints he purportedly made.

7

the alley across the street from J. Cole's Inn, standing outside of the bar, following individuals who left the bar, taking photographs of the customers waiting in line to enter the bar, and using threatening and intimidating language to J. Cole's Inn's patrons as they entered or exited J. Cole's Inn. Pl.'s Am. Resp. to Defs' SMF [ECF No. 176 at ¶ 66-73]. Plaintiff does not provide any specific information including the timing or frequency regarding this police presence, although former employees of J. Cole's Inn testified that police cars were stationed outside of J. Cole's Inn beginning in the Fall of 2012 through Spring 2013. Plaintiff claims that because of this constant police presence, his establishment gained a negative reputation as being a dangerous place for college students to visit. Plaintiff alleges that because of this constant police presence, his revenues dropped, as college students were afraid to patron his establishment. It is unclear from the record whether Plaintiff lodged any complaints about police presence between February 2013 and May 2013.

### Closure of J. Cole's Inn on May 3, 2013 – May 4, 2013

The evening of May 3, 2013 through the early morning of May 4, 2013, a California Borough Police Officer Kristie Salzman was on duty and patrolling the Borough. Officers Childs and Shultz were also on duty and at some point during their shift, Officers Childs and Shultz delivered an undercover vehicle to a location outside of the Borough while Officer Salzman remained on duty in the Borough. Officer Salzman became aware of numerous disturbances in the Borough involving drunk, violent and disorderly persons. Officer Salzman was compelled to call for assistance from other law enforcement agencies while Officers Childs and Shultz were temporarily located outside of the Borough, as the disturbance became extremely disorderly. Five other law enforcement agencies responded to the Borough to assist in clearing large groups of persons from the streets and bars located within the Borough limits. Sometime after this, Officer

Childs responded to the scene. In the early morning hours of May 4, 2013, Officer Childs made the decision to close four bars in the Borough, Wood Street, McMonagles, J. Cole's Inn and Peggy's Bar. Officer Shultz had no involvement in the early closure of the bars on the morning of May 4, 2013.

On May 4, 2013, Plaintiff sent a text message to Chief Encapera complaining about the alleged police misconduct. Plaintiff does not specify what misconduct he attempted to complain about. Chief Encapera responded that Plaintiff should provide his complaint to the Chief's secretary or to contact the Chief directly and that the Chief would need the information before the Council meeting on May 9, 2013.

On May 7, 2013, Chief Encapera wrote a letter to Plaintiff stating: "On Saturday, May 4, 2013, during a phone conversation you leveled some horrific accusations against a couple of officers from the California Borough Police Force. I asked you to come into my office on May 6, 2013, so we could document these accusations. At the time of this letter, you have not done this. I need your co-operation so I can address what you have accused these officers doing. I am in my office Monday – Friday from 7 AM 0 [sic] 3PM." Defs' SMF [ECF No. 135-13]. Plaintiff did not complain about officer misconduct at the May 9, 2013 Borough Council Meeting.

On May 7, 2013, Shultz and Childs were suspended from their positions as police officers as a result of misconduct unrelated to Plaintiff or J. Cole's Inn. Plaintiff admits that he has no evidence to support a claim that Officer Shultz took any action against him or J. Cole's Inn after May 4, 2013. *See* Shultz SMF [ECF No. 137 at ¶ 29]; Pl.'s Resp. to Shultz SMF [ECF No. 143 at ¶ 29].

### June 2013 Borough Council Meeting

On or about June 13, 2013, Plaintiff attended a Borough Council meeting and complained

about police misconduct. Prior to the meeting, Plaintiff provided the Borough Council with several boxes of documents which contained witnesses' statements, cell phone text logs and call logs, petitions and formal complaints. It is unclear from the record exactly what misconduct Plaintiff complained about at the Borough Council meeting. However, it is undisputed that Plaintiff attended the June 13, 2013 Borough Council meeting and complained about police misconduct.

Following the Borough Council meeting, on June 19, 2013, Chief Encapera emailed Officer Shultz informing him that several complaints were registered against him and an investigation was ongoing as to those complaints. Chief Encapera indicated in his email that he "had concern that [Officer Shultz] may retaliate" against those who levied the complaints and cautioned Officer Shultz that any such retaliation would be handled "both criminally and civilly with immediate suspension and dismissal." Pl.'s Am. Resp. to Defs' SMF [ECF No. 176-28].

Officer Shultz was terminated from the Borough in November 2013 due to an unrelated matter. Officer Childs resigned from the Borough in December 2013.

### Independent Investigator

The Borough retained an independent investigator in July 2013 who issued a report regarding a number of problems with the police department including issues with supervision, a lack of a system in place to void arrests, no policy regarding stop and frisk, no policy concerning civilian complaints, and no policy delineating establishments where off-duty police officers should not be permitted.

### August 12, 2013 Email from Chief Encapera to Mayor Durdines

On August 12, 2013, Chief Encapera wrote an email to Mayor Durdines which stated:

FYI – this morning I received information that Jason Cole approached Ptl Robatin at the KwikFill last week and told him that I threw all of my officers under the bus by hiring a New York Detective to investigate the police department – Nobody in my department, to my knowledge, had any first hand [sic] knowledge of an

investigator other than the DA until this incident . . . I just wanted this documented for future use because something need to be done to this medaling [sic] trouble maker[.]"

Pl.'s Am. Resp. to Defs' SMF [ECF No. 176-33 at 2].

## LCE Investigations

The following enforcement actions were taken against the Plaintiff by the Pennsylvania Bureau of Liquor Control Enforcement ("LCE") for the entirety of the time that Plaintiff has owned the bar:

(1) In July 2001, Plaintiff's liquor license was suspended for three days on the grounds that Plaintiff served an underage person alcohol;

(2) In February 2003, Plaintiff was directed to pay a fine of $1,000 and Plaintiff's liquor license was suspended for two days on the grounds that he served an underage person alcohol;

(3) In April 2004, Plaintiff was ordered to pay a fine of $300 on the grounds that he served patrons alcohol after 2:30 a.m.;

(4) In May 2004, Plaintiff was ordered to pay a fine of $150 on the grounds that he issued a check in payment for purchases of malt or brewed beverages which was dishonored by Plaintiff's bank due to insufficient funds;

(5) In November 2006, Plaintiff received a warning from the LCE for furnishing alcohol to a minor;

(6) In May 2012, Plaintiff received a warning from the LCE that his employees furnished more than one free drink per person;

(7) In March 2013, the LCE informed Plaintiff he served alcohol to an underage person;

(8) In April 2013, the LCE informed Plaintiff he served alcohol to an underage person;

(9) In May 2013, Plaintiff was cited for serving alcohol to an underage person;

(10) In June 2013, Plaintiff's liquor license was suspended for four days on the grounds that he served an underage person alcohol;

(11) In September 2013, the LCE issued a warning to Plaintiff for having four to five adulterated and/or contaminated liquor;

(12)　　　In May 2015, the LCE issued a warning to Plaintiff for having four to five adulterated and/or contaminated liquor.

Plaintiff asserts that Chief Encapera influenced these investigations in retaliation for his complaints of police misconduct by contacting the LCE to have his bar classified as a nuisance bar. Plaintiff further alleges that he has a long history of cooperating with the Borough police to prohibit underage drinking in his bar and he employed a retired LCE agent to assist in monitoring his bar.

## III.　PROCEDURAL HISTORY

On January 23, 2015, Plaintiff filed his original complaint against numerous Defendants, some of which have been dismissed. Plaintiff thereafter amended his complaint a total of three times, and the operative complaint, the Fourth Amended Complaint[5] was filed on April 18, 2016. The Fourth Amended Complaint asserts the following claims against the Borough, Mayor Durdines, Chief Encapera, Officer Shultz and Officer Childs:

1. Fourteenth Amendment substantive due process claim against all of the Defendants;

2. A civil conspiracy claim pursuant to 42 U.S.C. § 1983 against all of the Defendants;

3. First Amendment retaliation claim against all of the Defendants;

4. A municipal liability claim pursuant to 42 U.S.C. § 1983 against the Borough and Mayor Durdines;

5. Fourteenth Amendment Equal Protection claim against all of the Defendants;

6. A state law claim for trespass against Officers Shultz and Childs;

---

[5]　　　While Plaintiff filed his operative complaint as the "Fourth Amended Complaint," in actuality, this would be considered his third amended complaint. *See* Compl. [ECF No. 1]; Amended Complaint [ECF No. 13]; Second Amended Complaint [ECF No. 30]; Fourth Amended Complaint [ECF No. 74]. Regardless, the court will refer to his operative pleading as the "Fourth Amended Complaint."

7. A state law claim for tortious interference with business relations against Officers Childs and Shultz and Chief Encapera.

Discovery in this matter ended on November 21, 2016 and the moving Defendants filed their respective motions for summary judgment on February 13, 2017. *See* [ECF Nos. 133, 136]. Because of Plaintiff's failure to follow various rules of civil procedure in responding to the motions for summary judgment submitted by the parties, the litigation has been needlessly protracted in making this motion ripe for disposition. At this time, after numerous submissions and resubmissions to this court, the matter is finally ripe for disposition.

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260

F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## V.    DISCUSSION

Plaintiff alleges multiple constitutional and state law violations against each Defendant. Each claim will be addressed seriatim.

### a.   42 U.S.C. § 1983

Plaintiff's constitutional claims are made pursuant to 42 U.S.C. § 1983 ("section 1983") which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

To state a claim under section 1983, a plaintiff is required to show that an individual acting under color of state law violated the plaintiff's constitutional rights or statutory rights. *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 "is not itself a source of substantive rights, but a

14

method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n. 9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

In order for a plaintiff to adequately state a claim under section 1983, he must establish that the defendant deprived him of a right secured by the United States Constitution acting under color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). A plaintiff alleging a constitutional violation "must portray specific conduct by [ ] officials which violates some constitutional right." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). By doing so, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations omitted).

### b. Municipal Liability pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978)

#### i. Casey Durdines[6]

Confusingly, Plaintiff has levied a municipal liability claim against Mayor Durdines. It is apparent by its own terms that a claim for municipal liability pursuant to *Monell* only applies to

---

[6]    In Plaintiff's response, he argues that both Chief Encapera and Mayor Durdines "are liable under *Monell*," Pl.'s Op. Br. [ECF No. 173 at 20], however, he only asserts a claim for municipal liability against the Borough and Mayor Durdines in his Fourth Amended Complaint. *See* Fourth Am. Compl. [ECF No. 74] at pg. 17. Even if Plaintiff were to properly assert this claim against Chief Encapera, he would be entitled to judgment in his favor for the same reasons as Mayor Durdines.

municipalities and not to individuals. *Lepre v. Lukus*, 602 Fed. Appx. 864, 869 (3d Cir. 2015) (*Monell* "sets forth the test to determine if municipalities, not individuals, can be held liable under [Section] 1983.") (citing *Monell*, 436 U.S. at 694)). Even if Mayor Durdines was named as a defendant to this count in his official capacity, such a claim against him would be duplicative of the claim against the Borough, and moreover, Plaintiff was previously denied permission to amend his complaint to include any official capacity claims against Mayor Durdines. *See* Memo. Op. and Order [ECF No. 72] at 4-5 ("Because an action pursuant to 42 U.S.C. § 1983 'against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office[,]' and 'no different from a suit against the State itself[,]'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 . . . (1989) (citations omitted), Plaintiff's motion to add the Borough Mayors in their official capacities is denied as futile as California Borough, the Borough Mayors' 'office,' is a defendant in this action."). Therefore, Mayor Durdines is entitled to judgment in his favor as to Plaintiff's municipal liability claim.

### ii. California Borough

Plaintiff's claim against the Borough under *Monell* is that the Borough had a "custom and practice of retaliating against those individuals and business owners who make good faith reports of police officer misconduct." Fourth Am. Compl. [ECF No. 74] at ¶ 75. Further, Plaintiff alleges that the Borough "retaliated against other bar owners in a similar fashion for reporting misconduct and for criticizing the police department for misconduct and corruption." *Id*. at ¶ 80.

Municipalities and other local governmental units "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief." *Monell,* 436 U.S. at 690. "But, under [section] 1983, local governments are responsible only for 'their own illegal acts,'" and, like supervisors, "are not vicariously liable under [section] 1983 for their employees' actions." *Connick*

*v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted).  To state a plausible section 1983 claim against a municipality, the complaint must contain factual allegations showing that a municipal custom or policy caused the constitutional violation. *Monell*, 436 U.S. at 694; *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (the plaintiff must "identify a custom or policy, and specify what that custom or policy was").  "Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom the employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citations and internal marks omitted).  "Once a [section] 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.'" *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)).  Where the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Id*.

The Borough argues that Plaintiff's municipal liability claim must be dismissed as there is no viable constitutional claim against any individually named defendant.  This argument is summarily rejected, as the court has found that there is enough evidence for Plaintiff to survive summary judgment on his First Amendment Retaliation claim against Officers Childs and Shultz, as explained *infra*.  The Borough also argues that Plaintiff has failed to establish how the Borough's actions or omissions caused Plaintiff's alleged harm.  In response, Plaintiff argues that the Borough failed to "train, supervise and discipline [its police officers which] amounted to a policy that contributed to the deprivation of Plaintiff's rights." Pl.'s Op. Br. [ECF No. 173 at 23].

Plaintiff does not respond by pointing to any evidence that the Borough maintained a custom and practice of retaliating against those individuals and business owners who make good faith reports of police officer misconduct as set forth in his Fourth Amended Complaint. Plaintiff now seeks to hold the Borough liable under *Monell* on a theory of a failure to train, supervise and/or discipline.

As a preliminary matter, the Borough is entitled to summary judgment on Plaintiff's claim that it maintained a custom and practice of retaliating against those who complain of police misconduct, as Plaintiff has pointed to no evidence of any such claim, nor does he respond to the Borough's argument in this regard and is deemed to have abandoned this theory of liability.

Next, while a municipality may be liable for the failure to train its employees in limited circumstances, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), at no point in Plaintiff's Fourth Amended Complaint did he plead a failure to train, supervise or discipline claim against any defendant. To the extent that Plaintiff is now attempting to claim that the Borough's actions constituted a failure to train, supervise and/or discipline its employees, Plaintiff cannot amend his complaint, which failed to include any such claim, in his response to the Borough's summary judgment motion and the court need not consider Plaintiff's argument further. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.9 (3d Cir. 2002) (a plaintiff cannot "amend a complaint through any document short of an amended pleading."). Accordingly, the Borough is entitled to summary judgment on this claim.

### c. Fourteenth Amendment Substantive Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides that no "state . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

There is a multiple-part analysis that a court must conduct in determining whether a plaintiff has sufficient evidence of his due process claim. First, a plaintiff must identify a valid

liberty or property interest that is protected by the due process clause. *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). If the plaintiff identifies such a protected interest, the plaintiff must then show that the government has deprived him of that interest in such a way that "shocks the conscience." *Evans v. Secretary Pennsylvania Dept. of Corrections*, 645 F.3d 650, 660 (3d. Cir. 2011). *See also Desi's Pizza Inc. v. City of Wilkes–Barre*, 321 F.3d 411, 426–27 (3d Cir.2003).

Primarily, Plaintiff identifies no evidence that the Borough had any municipal custom or policy that caused his alleged Fourteenth Amendment violation, and because local governments are not "vicariously liable" under Section 1983 for their employees' actions, and only responsible for their "own illegal actions[,]" the Borough is entitled to summary judgment in its favor on Plaintiff's Fourteenth Amendment due process claim. *Connick*, 563 U.S. at 60. The court will therefore discuss Plaintiff's Fourteenth Amendment due process claim as he asserts it against the individual defendants, Mayor Durdines, Chief Encapera, and Officers Shultz and Childs.

Of course, these individuals must have been personally involved in the deprivation of Plaintiff's constitutional rights. To prevail "on a [Section] 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode*, 845 F.2d at 1207. A plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Chavarriaga*, 806 F.3d at 222. "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations

omitted). Therefore, "[t]he mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section 1983." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). Under section 1983, a supervisor can be liable for constitutional violations if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (citations omitted), *rev'd sub nom on other grounds by Taylor v. Barkes*, 135 S.Ct. 2042 (2015).

Plaintiff identifies two substantive due process rights at issue: his liberty and property right to hold specific private employment and to pursue a calling or occupation free from unreasonable government interference and his property right of the use and enjoyment of his property to operate J. Cole's Inn. Defendants argue that Plaintiff lacks protected interests because he must establish "more than a loss of unspecified business where the business still has the ability to carry out its fundamental business operation." Defs' Br. in Supp. [ECF No. 134 at 7].

Each interest will be addressed separately.

### Identifying a Protected Property Interest

The Defendants argue that Plaintiff lacks a protected property interest because he must establish "more than a loss of unspecified business where the business still has the ability to carry out its fundamental business operation." *Id*. Defendants argue that Plaintiff has failed to show that he has been prevented from operating his business, and the one hour shut down of his bar on May 4, 2013 during the uproar in town does not trigger Fourteenth Amendment protection. *Id*. at 8. Further, Defendants argue that there is no evidence that a Borough official conducted any "investigations" into Plaintiff's bar, and Plaintiff's claim that Liquor Control Enforcement

investigations were influenced by Chief Encapera are mere speculation.[7] *Id.*

In response, Plaintiff alleges that there is adequate evidence that Plaintiff "lost customers who were afraid of becoming the victims of the illegitimate actions of the officers in the Borough. Specifically, customers avoided the bar because they did not want to be harassed and intimidated as they walked by, or followed home when they left." Pl.'s Op. Br. [ECF No. 173 at 12]. Further, Plaintiff asserts that Officers "Shultz and Childs deliberately attempted to silence and punish Plaintiff by using their police power to harm his business." *Id.* Additionally, Plaintiff maintains that he has been forced to significantly reduce his operating hours and opens only once every fifteen days which is the legal minimum to maintain his liquor license, and has attached an accounting that shows he has suffered significant monetary losses. *Id.* at 13.

First, it must be mentioned that Defendants improperly conflate the requirement of identifying a protected property interest which invokes the Fourteenth Amendment, with the requirement of showing that the interest has been deprived by government conduct in a way that shocks the conscience. Accordingly, this court finds that Plaintiff has adequately alleged that his property interest in the use and enjoyment of his land is invoked and will move to discussing

---

[7]  Plaintiff points to an altercating between himself and Shannon Kratzer, the Borough's Zoning Officer which occurred on August 30, 2014 in which Kratzer tried to conduct an inspection at 11:30 p.m. on a Friday night and told Plaintiff that he had been told by Chief Encapera to conduct extra inspections of J. Cole's Inn. Allegedly, Kratzer told Plaintiff during this "inspection," "I should kick your fucking ass," "Jason, you need to stop making trouble for the Borough," and "Fuck you I own this town." First, none of these allegations are included in Plaintiff's Fourth Amended Complaint filed in April 2016. The only mention of Shannon Kratzer in Plaintiff's Fourth Amended Complaint is that Kratzer told Plaintiff that Chief Encapera kept a file on Plaintiff's bar to classify it as a nuisance bar. "A court is not required to assume that a plaintiff can prove facts not alleged." *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005). Moreover, Kratzer is not and has never been a defendant in this action and there is no claim that the Borough's zoning board conducted unnecessary inspections of Plaintiff's property. Thus, the exchange between Plaintiff and Kratzer is irrelevant and immaterial for purposes of the present motions, and the court will not consider this set of facts.

whether Plaintiff has adequately alleged that his property interests were deprived by government conduct in a way that shocks the conscience. *See DeBlasio v. Zoning Bd. of Adjustment for Tp. of West Amwell*, 53 F.3d 592, 601 (3d Cir. 1995) *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392, 394 (3d Cir. 2003) (recognizing that the ownership and use of real property is an interest protected by the due process clause of the Fourteenth Amendment); *Button v. Snelson*, 679 Fed.Appx. 150, 154 (3d Cir. 2017) (recognizing a fundamental property interest in a plaintiff operating its business).

### Deprivation of a Property Interest

Plaintiff alleges that the defendants have prevented him from operating J. Cole's Inn through their alleged harassing and intimidating conduct to Plaintiff's patrons in retaliation for Plaintiff complaining of police misconduct and that this direct adverse government action caused his business significant monetary losses and violates his property interests in violation of the Fourteenth Amendment.

Defendants argue that Plaintiff needs to show that he was *completely prevented* from operating his business to state a valid Fourteenth Amendment substantive due process claim. Defendants rely on *Phantom of Eastern Pennsylvania v. New Jersey State Police*, 2008 WL 2039461 (E.D.Pa. 2008) and *Tower Properties LLC v. Village of Highland Falls*, 2015 WL 4124499 (S.D.N.Y. 2015) for this proposition. The court summarily rejects Defendants' argument under this case law, as it is persuasive authority, and authority from the Court of Appeals for the Third Circuit exists on this point. *See Thomas v. Independence Tp.*, 463 F.3d 285, 297 (3d Cir. 2006).[8]

---

[8] While Plaintiff points to the Third Circuit's opinion in *Thomas* in his opposition brief, the Defendants fail to distinguish it. Further, neither *Phantom*, nor *Tower Properties LLC,* both decided post-*Thomas*, used this authority to make their respective determinations, and are further

A plaintiff does not need to be completely prevented from operating his business to state a valid Fourteenth Amendment substantive due process claim, as the Court of Appeals for the Third Circuit has found differently. In *Thomas*, a plaintiff business owner alleged that certain township officials including local police officers engaged in a campaign of defamation, harassment and intimidation which deprived the plaintiff of his liberty and property rights in violation of the Fourteenth Amendment. *Id*. The Court of Appeals found that the plaintiff could state a valid Fourteenth Amendment claim for the deprivation of his liberty and property interests if he could "show that the alleged harassment **removed or significantly altered** plaintiffs' liberty and property interest in their business." *Id*. at 297 (citing *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 704 (5th Cir. 1991) (internal quotation marks and alterations of text omitted) (emphasis added).

Plaintiff has sufficiently alleged that the alleged harassment he suffered significantly altered his liberty and property interests in his business as the officers stationed police cars outside of the bar, followed patrons who left the bar, took photographs of customers waiting in line to enter the bar and/or used threatening and intimidating language to customers as they entered or exited the bar. In response, customers chose to not go to Plaintiff's bar because of the police presence, which ultimately led to the decline in Plaintiff's business. Thus, Plaintiff has adequately adduced evidence that the harassment he suffered by the officers significantly altered his property interest in his business.

**Identification and Deprivation of a Liberty Interest**

For the same reasons mentioned *supra*, Plaintiff has identified a liberty interest protected by the Fourteenth Amendment Due Process Clause, *i.e.*, his right to hold specific private

---

rejected for this reason.

employment and to follow a chosen profession free from unreasonable government interference. *See Thomas*, 463 F.3d at 297 ("the liberty to pursue a calling or occupation . . . is secured by the Fourteenth Amendment.") (citations omitted); *Piecknick v. Com. of Pa.*, 36 F.3d 1250, 1259 (3d Cir. 1994) ("The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within both the 'liberty' and 'property' concepts of the Fifth and Fourteenth Amendments.").

However, "[i]t is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." *Piecknick*, 36 F.3d at 1259 (citations and internal quotation marks omitted). More specifically, "the Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause." *Id.* (citations omitted). The right to engage in the common occupations of life is "fairly narrow," and state action does not violate that liberty "absent a complete revocation or a substantial interference with one's chosen occupation." *Runco Transp., Inc. v. Mid Valley School Dist.*, 2015 WL 672260, at *10 (M.D.Pa. 2015) (citations omitted).

Here, for the same reasons mentioned *supra*, Plaintiff has alleged enough evidence that the government action substantially interfered with his chosen occupation, as, according to him, because of the constant police presence surrounding his bar, customers did not want to visit J. Cole's Inn and he incurred substantial monetary losses and only opens his bar once every fifteen days to maintain his liquor license. Therefore, Plaintiff has adequately alleged sufficient evidence to show that he was deprived of a property and liberty interest protected by the Fourteenth Amendment, and the court will next determine whether the government conduct Plaintiff alleges "shocks the conscience."

24

**"Shocks the Conscience"**

What constitutes conscience shocking is subjective and contextual, however it is "government conduct intended to injure that is most likely to rise to the conscience-shocking level." *Evans*, 645 F.3d at 660. "[A]llegations of corruption, self-dealing [or] bias against an ethnic group" may shock the conscience. *Chainey*, 523 F.3d at 220. When alleging self-dealing or corruption, the plaintiff must "set forth facts that raise the allegations beyond the realm of mere improper motives." *Potter v. City of Chester*, 2012 WL 5464970, at *5 (E.D.Pa.2012) (citing *Locust Valley Golf Club, Inc. V. Upper Saucon Twp.*, 391 Fed. App'x 195 (3d Cir.2010)).

Defendants argue that Plaintiff has offered no evidence that any of the Defendants' conduct was conscience shocking. In response, Plaintiff alleges that Childs and Shultz tried to silence Plaintiff from making their "sexual harassment and indiscretions" public by intimidating and harassing his clientele at J. Cole's Inn. Pl.'s Op. Br. [ECF No. 173 at 15]. Plaintiff further proffers evidence that Chief Encapera authored an email to Mayor Durdines and Borough Council that stated: "something needs to be done about this medaling [sic] troublemaker."[9] *Id.*

---

[9]      Plaintiff does not put forth any evidence in his opposition brief that Chief Encapera's conduct "shocked the conscience" in any other way but by emailing Mayor Durdines that "something needed to be done" about Plaintiff. The court will not address facts that Plaintiff has failed to raise in support of his contentions that Chief Encapera's conduct was conscience shocking – namely, that he took steps to have Plaintiff's bar classified as a nuisance bar. Plaintiff entire response to the Defendants' contention that he has asserted no evidence of conscience shocking conduct is as follows:

> "In the instant matter, Defendants intended to silence Plaintiff from making their sexual harassment and indiscretions public, and to punish him for lodging complaints that brought their inappropriate relationships to light. They used their police power to intimidate and harass individuals who patronized J. Cole's Inn. Encapera went so far as to write an email to Durdines and Borough Council, stating that "something needs to be done about this meddaling[sp] [sic] troublemaker." Defendants attempt to deny that Plaintiff made complaints prior to May 4, 2013, Plaintiff's record show that he began to complain in October of 2012."

First, no reasonable juror could find that a single email sent by Chief Encapera to Mayor Durdines and the Borough Council calling Plaintiff a "meddling troublemaker" shocks the conscience. Accordingly, Chief Encapera is entitled to summary judgment in his favor on Plaintiff's Fourteenth Amendment substantive due process claim alleging the deprivation of a property interest. Moreover, Plaintiff does not point to any conduct on behalf of Mayor Durdines, besides the receipt of this email from Chief Encapera. Because supervisory liability in a section 1983 claim cannot be based on respondeat superior, Mayor Durdines is also entitled to summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim.

The court now turns to Officers Childs and Shultz as to whether their conduct "shocks the conscience." Because government conduct intended to injure that is most likely to rise to the conscience-shocking level, the court finds that there is enough evidence of record such that a reasonable jury could conclude that Officers Childs and Shultz deprived Plaintiff of his property and liberty interests in violation of the Fourteenth Amendment. The evidence of record, however tenuous, that Officers Childs and Shultz may have prevented Plaintiff from the use and enjoyment of his property by retaliating against him for complaining to them directly of their misconduct in February 2013 by stationing police cars outside of his bar, unnecessarily following patrons who left the bar, taking photographs of customers waiting in line to get into the bar, and/or using threatening and intimidating language to customers as they entered or exited the bar is sufficiently

Pl.'s Op. Br. [ECF No. 173 at 15]. It must be emphasized that it is not the responsibility of the district court to "comb the record in search of disputed facts," *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency of the City of Atlantic City*, 68 F.Supp.3d 545, 549 (D.N.J.2014), and the court has made every practicable effort in considering Plaintiff's version of events. However, if the Plaintiff fails to set forth a set of disputed facts in response to Defendants' motion which would preclude summary judgment, the court will not set forth those facts for Plaintiff. "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n. 8 (3d Cir.2006). It is incumbent upon Plaintiff to show the existence of facts which support his causes of action.

conscience shocking.

While Defendants rely on *Potter v. City of Chester*, 2012 WL 5464970 for the proposition that this evidence does not rise to the level conscience shocking, that case is distinguishable. The *Potter* court found that the plaintiff had not alleged that the defendants personally benefitted or benefitted from harassing the plaintiff and therefore could not state a valid Fourteenth Amendment substantive due process claim. Here, it is plausible to infer that the only reason that Officers Shultz and Childs took the action that they did against J. Cole's Inn was a direct response to Plaintiff complaining of their misconduct and to further quell his speech, or retaliate against him from complaining about their indiscretions. Such conduct benefits no one but Officers Shultz and Childs. Accordingly, because a reasonable jury could find that Officers Shultz and Childs' conduct rose to the level to shock the conscience, the court finds that Officers Shultz and Childs are not entitled to summary judgment on Plaintiff's Fourteenth Amendment substantive due process claim and their respective motions will be denied.

### d. First Amendment Retaliation

Plaintiff alleges that the Defendants retaliated against him in violation of the First Amendment after he reported instances of police misconduct, the Defendants "retaliated against [him] by obstructing and damaging [his] business operations" and that his speech complaining of police corruption is protected under the First Amendment. Fourth Am. Compl. [ECF No. 74 at ¶ 70].

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. A government may not retaliate against a citizen for exercising his rights guaranteed under the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The right to petition protected by the First Amendment "extends to all

departments of the Government, including administrative agencies . . . and encompasses formal and informal complaints . . . about matters of public and private concern." *Arneault v. O'Toole*, 513 Fed.Appx. 195, 198 (3d Cir. 2013). To state a valid First Amendment Retaliation claim, a plaintiff must show the following: (1) "that he engaged in constitutionally-protected activity"; (2) "that the government responded with retaliation"; and (3) "that the protected activity caused the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citations omitted). The "key question" determining whether an individual has been retaliated against for exercising his First Amendment rights is whether the government conduct "was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Thomas*, 463 F.3d at 296.

First, the Borough is entitled to summary judgment on this claim, as explained *supra*, as Plaintiff has pointed to no evidence that the Borough maintained a custom or practice of retaliating against those who complaint of police misconduct, and a municipality cannot be vicariously liable under section 1983 for their employees' actions. The court will therefore discuss Plaintiff's First Amendment retaliation claim as he asserts it against the individual Defendants – Mayor Durdines, Chief Encapera and Officers Shultz and Childs.

The individual Defendants argue that Plaintiff has failed to adduce any evidence that Plaintiff was retaliated against for engaging in constitutionally protected speech. They argue that because Plaintiff first complained about police misconduct to Chief Encapera on May 4, 2014, and because it is undisputed that no officer engaged in retaliation after May 4, 2014, Plaintiff has no evidence of retaliation.

While Defendants are correct that there is no allegation of retaliation after May 4, 2014, this argument ignores other material facts of record. Specifically, Plaintiff complained directly to Officers Childs and Shultz in February 2013 of their alleged sexual harassment of Plaintiff's

employees. There is evidence of record, however tenuous, that Officers Shultz and Childs may have engaged in retaliation following the February 2013 complaints by stationing police cars outside of the bar, following patrons who left the bar, taking photographs of customers waiting in line to get into the bar, and/or using threatening and intimidating language to customers as they entered or exited the bar. The extent this conduct occurred, and whether it was retaliatory, must be determined by a jury. Therefore, Officers Shultz and Childs' respective motions for summary judgment as to Plaintiff's First Amendment retaliation claim is denied.

While Plaintiff has adduced evidence of a First Amendment retaliation claim against Officers Shultz and Childs, Plaintiff has not pointed to any specific evidence of personal involvement by Chief Encapera or Mayor Durdines in retaliating against Plaintiff for complaining about police misconduct and summary judgment will be granted in their favor. Speculation and conjecture will not suffice to surpass summary judgment, and Plaintiff only speculates that these Defendants had knowledge of Officers Shultz and Childs' retaliation and acquiesced to such conduct. Constructive knowledge of the officers' alleged retaliation will not suffice. Accordingly, Mayor Durdines and Chief Encapera are entitled to summary judgment in their favor for Plaintiff's First Amendment retaliation claim.

### e. Fourteenth Amendment Equal Protection

Plaintiff alleges that each of the Defendants violated his Fourteenth Amendment equal protection rights because similarly situated business owners in the Borough were not forced to endure "constant police harassment, including unwarranted surveillance." Fourth Am. Compl. [ECF No. 74 at ¶¶83-84].[10] The Equal Protection Clause of the Fourteenth Amendment provides

---

[10] To be clear, Plaintiff does not levy a selective enforcement claim against any of the Defendants.

that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated." *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010) (citations omitted). There are two traditional theories under which a plaintiff can state an equal protection claim. The first, traditional theory protects a plaintiff from discriminatory treatment based upon his membership in a protected class, such as race or gender. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The second theory is the "class of one" theory which allows a plaintiff to advance an equal protection claim without being a member of a protected class. Under the "class of one" theory, a plaintiff must allege that (1) the defendants treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006).

Defendants argue that Plaintiff has failed to offer any evidence that J. Cole's Inn was treated any differently than other bars in the Borough. Defs' Br. in Supp. [ECF No. 134 at 18]. In response, Plaintiff alleges that J. Cole's Inn received a disproportionate level of police scrutiny from Officers Shultz and Childs. Pl.'s Op. Br. [ECF No. 173 at 24].

Primarily, Plaintiff offers no evidence, nor does he argue that the Borough, Chief Encapera, or Mayor Durdines somehow violated his equal protection rights. A moving party is entitled to summary judgment where the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex Corp.*, 477 U.S. at 323 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."). Accordingly, summary judgment will be granted in favor of the

Borough, Chief Encapera and Mayor Durdines for Plaintiff's Fourteenth Amendment Equal Protection claim. *See also Campbell v. Jefferson University Physicians,* 22 F.Supp.3d 478, 487 (E.D.Pa. 2014) ("when a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure "constitutes an abandonment of those causes of action and essentially acts as a waiver of those issues.").

As for Officers Shultz and Childs, they attempt to argue that there is no evidence that they treated Plaintiff's bar differently from other bars in the Borough, because on the particular occasion when Plaintiff's bar was shut down, all of the bars in the same vicinity as J. Cole's Inn were also shut down. This argument is rejected, as it ignores Plaintiff's contentions that Officers Shultz and Childs would unnecessarily surveil Plaintiff's bar and harassed and threatened Plaintiff's patrons and did not do this to other bars in the area. Accordingly, Officers Shultz and Childs are not entitled to summary judgment on Plaintiff's Equal Protection claim and their motions will be denied in that respect.

### f. Civil Conspiracy

Plaintiff alleges a claim for civil conspiracy in violation of his First Amendment rights pursuant to section 1983. Specifically, Plaintiff alleges that the "Defendants conspired to retaliate against Plaintiff for reporting police misconduct, to suppress his protected speech critical of police policies and practices, to harass him and to impair his ability to conduct his business and earn a living. The purpose of the conspiracy was to retaliate against [Plaintiff] for engaging in speech that was critical of the police and reported, in good faith, police corruption to the governing body, all protected speech under the First Amendment and the Defendants conspired to retaliated against [Plaintiff] for exercising his First Amendment rights." Fourth Am. Compl. [ECF No. 74] at ¶¶ 65-66.

To state a claim for civil conspiracy under section 1983, a plaintiff must put forward sufficient facts to demonstrate that (1) an actual agreement among the co-conspirators or a "meeting of the minds" and (2) concerted action. *See Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008). Of course, to state a cause of action for civil conspiracy under section 1983, plaintiff must plead both the elements of the cause of action under section 1983 and the elements to state a conspiracy. *See Cunningham v. North Versailles Tp.*, 2010 WL 391380, at *5 (W.D.Pa.,2010) (collecting cases). *See also Goldschmidt v. Patchett*, 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises.").

Plaintiff only alleges that the Defendants conspired to deprive him of his First Amendment rights, and because that claim only survives as it applies to Officers Shultz and Childs, only those Defendants will be addressed here. The remaining Defendants – the Borough, Mayor Durdines and Chief Encapera – are entitled to summary judgment as to Plaintiff's claim of civil conspiracy, as no predicate First Amendment claim remains.

Officer Shultz argues that Plaintiff's allegations that Officer Shultz retaliated against Plaintiff by harassing and intimidating him are factually unsupported, as Officer Shultz was placed on administrative duty in May 2013 and it is undisputed that he had no further involvement with Plaintiff. This argument is rejected for the same reason that it was rejected *supra, i.e.*, that it ignores that Plaintiff complained directly to Officers Shultz and Childs in February 2013 and further alleges that after this occurred, he was retaliated against. Officer Shultz further argues that Plaintiff has failed to come forward with any evidence from which a "conspiratorial agreement" or "meeting of the minds" could be inferred.[11] Officer Childs' entire argument for summary

---

[11]     Officer Shultz also argues in a footnote that he is "immune" and cites to *Bennett v. Murphy*,

judgment to be granted in his favor on this claim is: "Plaintiff has proffered no evidence that the individual defendants acted collectively to violate his rights." Defs' Br. in Supp. [ECF No. 134 at 15].

The court disagrees with Officer Childs and Shultz's arguments. There is enough record evidence to infer that a conspiratorial agreement occurred between Officers Childs and Shultz to retaliate against Plaintiff for complaining to them about their misconduct. If there is so much as a possibility that "a jury could infer from the circumstances that the co-conspirators had a meeting of the minds and reached an understanding to achieve their objectives, the question of whether an agreement exists is for a jury to decide." *Jackson-Gilmore v. Dixon*, 2005 WL 3110991, at *12 (E.D.Pa. 2005) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153 (1970). A reasonable jury could find that after Plaintiff complained to them in February 2013 to stop harassing his employees that Officers Shultz and Childs decided to retaliate against Plaintiff by making their presence constant in or around his bar, which in turn, gave his bar a bad reputation and caused him to lose profits. Therefore, Officers Childs and Shultz's motion for summary judgment is denied in this respect.

### g. Qualified Immunity

Officer Childs argues that he is entitled to qualified immunity for Plaintiff's constitutional claims.[12] "[G]overnment officials performing discretionary functions generally are shielded from

---

274 F.3d 133, 136 (3d Cir. 2002) without further explanation. Bennett outlines qualified immunity, however this court will not address such unsupported arguments relegated to a footnote and will make no determination as to Officer Shultz's entitlement to qualified immunity, as it has not been developed sufficiently to warrant granting summary judgment in his favor.

[12] Likewise, Mayor Durdines and Chief Encapera argue that they are entitled to qualified immunity for Plaintiff's constitutional claims. Because the court has found that they are entitled to summary judgment for all of Plaintiff's constitutional claims, the issue of qualified immunity need not be addressed as to those Defendants.

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). The entirety of Officer Childs argument is as follows: "Here, no constitutional violation has been established. Even assuming that plaintiff established a genuine issue of material fact as to the liability of [Officer] Childs . . . [he] is immune from suit on the ground [he] acted reasonably under the circumstances." Defs.' Br. in Supp. [ECF No. 134 at 20]. The court has found that there is enough evidence that a reasonable jury could find that Officer Childs violated Plaintiff's constitutional rights, therefore Officer Childs' argument is rejected. Whether Officer Childs acted reasonably under the circumstances is an issue of fact for the jury to determine. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (when conducting a qualified immunity analysis, a court may not resolve genuine disputes of fact in favor of the party seeking summary judgment); *Giles v. Kearney*, 571 F.3d 318, 327 (3d Cir. 2009) (a genuine issue of material fact will preclude summary judgment on qualified immunity). Accordingly, Officer Childs is not entitled to qualified immunity for Plaintiff's constitutional claims.

### h. Trespass Claim pursuant to Pennsylvania Law against Officers Shultz and Childs

The Court next turns to Plaintiff's trespass claim against Officers Shultz and Childs. Plaintiff alleges that Officers Shultz and Childs trespassed on Plaintiff's property when they conducted the warrantless search of Michael Steve's apartment on January 26, 2013 in responding to a complaint against Michael Steve. Plaintiff argues that the officers trespassed on the "common areas" or hallways leading to Michael Steve and caused unspecified damages to the common areas and hallway. Plaintiff's claim is not predicated on any intrusion into Michael Steve's apartment. It is also undisputed that Plaintiff was present during this search.

Under Pennsylvania law, a person is subject to liability for trespass on land, irrespective of

whether the alleged trespasser causes damages to the property, if the person intentionally "enters or remains upon land in possession of another without a privilege to do so created by the possessor's consent or otherwise." *Rossino v. Kovacs*, 718 A.2d 755 (Pa. 1998) (citing Restatement (Second) of Torts § 329 (1965)). To maintain an action in trespass, the Plaintiff must have had the exclusive use and possession of the property at issue. *Northeast Women's Center, Inc. v. McMonagle*, 670 F.Supp. 1300, 1311 (E.D.Pa. 1987) (applying Pennsylvania law). Further, a "right of entry constitutes an absolute defense to an action in trespass." *Gavin v. Loeffelbein*, 161 A.3d 340, at *11 (Pa.Super. 2017) (citing *Gedekoh v. Peoples Nat. Gas Co.*, 133 A.2d 283, 284-85 (Pa. Super. 1957)).

The entirety of Officer Childs' argument in support of granting summary judgment on Plaintiff's trespass claim is that "Plaintiff's state law claim for trespass fails because Plaintiff has proffered no evidence that Officer Childs entered his property without privilege to do so." Defs' Br. in Supp. [ECF No. 134 at 18]. Officer Childs does not develop his argument further and provides no legal authority or factual assertions to support his position that his entrance was privileged by virtue of consent or otherwise. Without more, Officer Childs has not met his initial burden under Federal Rule of Civil Procedure 56 of proving the absence of evidence supporting Plaintiff's claim of trespass. Accordingly, Officer Childs' motion for summary judgment is denied in this respect.

Officer Shultz's argument for judgment in his favor is slightly more developed. He argues that Plaintiff's claim for trespass fails because Plaintiff did not have the exclusive use and possession of the property at issue, as it was leased to Michael Steve when the officers conducted the warrantless search. Plaintiff admits that he only claims that the officers trespassed into the common areas and the hallways of the apartment building and does not allege that the officers

committed a trespass by entering into Steve's apartment. Thus, Officer Shultz's argument to this point is moot. In his reply, Officer Shultz argues that Plaintiff's complaint cannot be fairly read to include a claim for trespass as to the common areas, as his complaint specifically alleges that the officers trespassed upon one of Plaintiff's "apartments" with no mention of the common areas. *See* Shultz Reply [ECF No. 147 at 5]. The court disagrees with Officer Shultz, as the complaint can fairly be read as including a claim for trespass of the common areas and the parties cannot otherwise show prejudice in deeming Plaintiff's "common areas" theory pleaded under Plaintiff's trespass claim.[13] *See* Fed. R. Civ. P. 15(b).

Officer Shultz also argues that it is undisputed that Plaintiff "was present" during the search, observed the officers approach Steve's apartment through the common areas and there is no evidence that Plaintiff objected to the officers' presence in the common areas.[14] Plaintiff responds that a landlord can sue "for trespass damages if the common area of [his] building is being used in an unauthorized manner" and relies on *202 Marketplace v. Evans Products Co.*, 824 F.2d 1363, 1367 (3d Cir. 1987) for this proposition. *See* Pl.'s Op. Br. [ECF No. 173 at 27]. First, Plaintiff's reliance on *202 Marketplace* is misplaced, as it simply mentions that a landlord can bring a trespass claim against a tenant who is making unauthorized use of a common area. It does not stand for the proposition that a non-tenant police officer acting in his official duties can be liable to a landlord for entrance on his property. Plaintiff does not address Officer Shultz's

---

[13]     To this end, Plaintiff's Fourth Amended Complaint states that "while executing their illegal search, Defendants trespassed upon the private property of Plaintiff and caused damage to the premises." [ECF No. 74 at ¶ 103].

[14]     Officer Shultz also argues that Plaintiff has failed to produce evidence of damage to the common area, however, it is axiomatic that damages are not an element of a trespass claim. *See e.g.*, *Boring v. Google Inc.*, 362 Fed. Appx. 273, 281 (3d Cir. 2010) ("There is no requirement in Pennsylvania law that damages be pled [for a trespass claim], either nominal or consequential."). Rather, if Plaintiff fails to prove at trial that he suffered any consequential damages from the alleged trespass, and he succeeds on this claim, he will simply be entitled to nominal damages.

contention that the entrance upon Plaintiff's property was privileged.

While Officer Shultz argues that Plaintiff "did not object" to his presence in the hallway, he does not go as far as to argue that he had Plaintiff's consent – implied or otherwise – to enter the common areas. Accordingly, whether the officers had consent to enter the common areas will be treated as an affirmative defense to Plaintiff's trespass claim. *See* 75 Am.Jur.2d. Trespass § 73 (2009) ("Consent . . . may be implied from custom, usage, or conduct. Consent . . . will only be applied if the owner has actual knowledge that people have been entering the [property] and fails to take reasonable steps to prevent or discourage them."); Restatement (Second) of Torts § 158 comment d (1965) ("Conduct which would otherwise constitute a trespass is not a trespass if it is privileged. Such a privilege may be derived from the consent of the possessor . . . or may be given by law because of the purpose for which the actor acts or refrains from acting[.]")). Accordingly, Officer Shultz's motion for summary judgment as to Plaintiff's trespass claim is denied.

### i. Tortious Interference with Business Relations pursuant to Pennsylvania Law against Mayor Encapera and Officers Shultz and Childs

Plaintiff brings a tortious interference with business relations under Pennsylvania law against Chief Encapera and Officers Shultz and Childs alleging that the Officer's conduct and Chief Encapera's failure to supervise and/or train his officers caused Plaintiff's business lost profits because customers did not want to patron J. Cole's Inn because of police presence.

To state a claim under Pennsylvania law for tortious interference with business relations, a plaintiff must allege "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and, (4) the occasioning of actual damage resulting from the defendant's conduct." *Vintage Homes, Inc. v. Levin*, 554 A.2d 989, 994 (Pa.Super. 1989). While courts are cautious to define the terms "prospective contractual relation," the plaintiff must show that there

is a "reasonable likelihood or probability" of the contractual relation which is "something more than a mere hope or innate optimism of the salesman." *InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627 (Pa.Super. 2006) (citations omitted)). *See also Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 2012 WL 3562030, at *17 (M.D. Pa. 2012) (same).

Chief Encapera and Officer Childs' entire argument in support of their motion for summary judgment on this claim is that "Plaintiff has proffered no evidence to support such a claim against any moving Defendant." Defs' Br. in Supp. [ECF No. 134 at 18]. Such a threadbare argument does not sustain Defendants' initial burden of proving the absence of evidence supporting Plaintiff's claim for tortious interference with business relations and Chief Encapera and Officer Childs' motion for summary judgment is denied in this respect.

Next, Officer Shultz argues that there is no evidence that he intentionally interfered with prospective contractual relationships with Plaintiff's customers at the bar because Plaintiff's bartender Tedrow could not provide the name of any person who would not patronize the bar because of Officer Shultz's conduct, and further argues that Shultz never "did anything personally" to Plaintiff to cause harm to his business. Shultz Br. in Supp. [ECF No. 138 at 18]. Again, Officer Shultz's argument ignores other material facts of record that tend to show that he intentionally interfered with Plaintiff's prospective contractual relationships by stationing his police car outside of the bar, following patrons who left the bar, taking photographs of customers waiting in line to get into the bar, and/or using threatening and intimidating language to customers as they entered or exited the bar. The fact that Tedrow could not provide the name of any person who told her that they would not visit the bar because of police presence is immaterial; she, and other bar employees testified that numerous individuals informed them that they would not patron the bar because of constant police presence. Whether they remember the names of those individuals does

not prove that they witnessed these events, but rather goes to their credibility, which is not for this court to determine. Likewise, Officer Shultz seemingly argues that he was justified in any action he took against the bar because of his discretionary authority to "enforce the law, investigate individuals and abate criminal nuisances." *Id*. at 18. A determination of whether Officer Shultz was acting within his discretionary authority in allegedly surveilling J. Cole's Inn and its patrons during the applicable time frame is an issue of fact for the jury to determine. Accordingly, Officer Shultz's motion for summary judgment is denied in this respect.

### j. J. Cole Inn's Damages

Finally, the Defendants argue that Plaintiff may not seek damages allegedly incurred by J. Cole's Inn, as he lacks standing to do so. Plaintiff responds that all income from J. Cole's Inn has been reported on Plaintiff's personal tax returns since 1997 and he has standing to pursue damages on behalf of J. Cole's Inn. Plaintiff offers no legal authority for his proposition. This issue is not yet ripe, and the court will defer ruling on this issue until such time where damages may be awarded.

## VI.   CONCLUSION

To recapitulate, the following claims remain against the following Defendants: (1) a Fourteenth Amendment due process claim against Officers Shultz and Childs only; (2) a First Amendment retaliation claim against Officers Shultz and Childs only; (3) a Fourteenth Amendment equal protection claim against Officers Shultz and Childs only; (4) a section 1983 civil conspiracy claim against Officers Shultz and Childs only; (5) a state law trespass claim against Offices Shultz and Childs only; (6) a state law tortious interference with business relationships claim against Chief Encapera, and Officers Shultz and Childs. The remaining Defendants are entitled to summary judgment in their favor for the remaining claims.

An appropriate Order follows.

Dated: August 16, 2017

By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     all counsel of record via CM/ECF electronic filing